**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

PENNY CARTER,

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

CIVIL ACTION NO. 3:20-cv-01365

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Penny Carter, seeks judicial review of
the final decision of the Commissioner of Social Security denying her
claims for disability insurance benefits and supplemental security
income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The
matter has been referred to the undersigned United States magistrate
judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed.
R. Civ. P. 73.

## I.  BACKGROUND

On April 18, 2018, Carter protectively filed claims for disability
insurance benefits and supplemental security income, both asserting a
disability onset date of January 28, 2018. Both claims were initially

denied by state agency reviewers on September 11, 2018. The plaintiff then requested an administrative hearing.

A video hearing was subsequently held on September 16, 2019, before an administrative law judge, April M. Wexler (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Brian Bierley. The plaintiff was represented by counsel at the hearing.

On October 4, 2019, the ALJ denied Carter's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Carter was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Carter had not engaged in substantial gainful activity since her alleged disability onset date. At step two, the ALJ found that Carter had the severe impairments of: lumbar disc disease, emphysema, osteoarthritis in her right knee, major depressive disorder, and anxiety disorder. At step three, the ALJ found that Carter did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential evaluation process, the ALJ assessed Carter's residual functional capacity ("RFC"). *See generally id.* at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Carter had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[1] with the following limitations:

> [T]he claimant can never climb ladders, ropes and scaffolds but can occasionally climb ramps or stairs. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can have no concentrated exposure to extreme heat, extreme cold, wetness, humidity, vibrations, fumes, odors, dusts, gases, poor ventilation and hazards. She is limited to simple, routine, repetitive tasks and simple, work[-]related judgments and decisions. She can understand, remember and carry out only short and simple instructions. She can have no more than occasional changes in a routine work setting. The claimant can perform goal-oriented work but not fast[-]paced work. She is limited to occasional interaction with co-workers and supervisors but no interaction with members of the general public.

(Tr. 20.)

_____

[1] The Social Security regulations define "light work" as a job that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *id.* § 416.967(b).

In making these factual findings regarding Carter's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304. The ALJ also considered and articulated how persuasive she found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. §§ 404.1520c, 416.920c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Carter was capable of performing her past relevant work as a wax injector, DOT # 549.685-038,[2] as actually and generally performed. Based on this finding, the ALJ concluded that Carter was not disabled for Social Security purposes.[3]

---

[2] *See* DICOT 549.685-038, 1991 WL 675002 ("wax molder").

[3] Although the ALJ found Carter not disabled at step four, she also recorded an alternative finding that Carter was capable of performing other jobs that exist in significant numbers in the national economy, which would in turn dictate a not-disabled finding at step five. Based on Carter's age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Carter was capable of performing the requirements of representative occupations such as machine feeder, DOT # 583.686-014, line attendant, DOT # 920.687-042, and product sorter, DOT # 529.687-186. *See* DICOT *(continued on next page)*

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on July 6, 2020, making the ALJ's September 2019 decision the final decision of the Commissioner subject to judicial review by this court.

Carter timely filed her complaint in this court on August 4, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

---

583.686-014, 1991 WL 684347 ("fusing-machine feeder"); DICOT 920.687-042, 1991 WL 687971 ("bottling-line attendant"); DICOT 529.687-042, 1991 WL 674781 ("sorter, agricultural produce").

Carter asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate a February 6, 2018, functional capacity evaluation performed by an occupational therapist; (2) the ALJ failed to properly evaluate an August 23, 2019, opinion by Carter's treating family physician, Dr. Victor Lahnovych; (3) the ALJ failed to properly evaluate an August 8, 2018, opinion by a consulting examining psychologist, Andrew Cole; and (4) the ALJ failed to properly consider Carter's subjective complaints of pain.[4]

## A. Evaluation of Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between"

---

[4] We note that the plaintiff's brief identified only three issues on appeal, combining the third and fourth issues listed here into a single section of her brief. Although perhaps related, these two aspects of the ALJ's decision implicate different administrative rules for the evaluation of evidence, so we have separated them into two separate issues for our discussion.

conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in April 2018. Thus, a relatively new regulatory framework

governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*,

527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'"

*Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (supportability), and *id.* §§ 404.1520c(c)(2), 416.920c(c)(2) (consistency), *with id.* §§ 404.1527(c)(3), 416.927(c)(3) (supportability), and *id.* §§ 404.1527(c)(4), 416.927(c)(4) (consistency).[5] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R.

---

[5] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

§§ 404.1520c(b)(2), 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *Prior Administrative Findings*

The ALJ considered the prior administrative findings in this case, finding them to be "persuasive." The ALJ found the findings and opinions by state agency medical and psychological consultants contained therein to be "generally consistent with the record and supported by the evidence." (Tr. 22.)

The prior administrative findings included the opinions of a state agency medical consultant, Isabella Picciotti, MD, who had found the claimant capable of performing light work with some postural and

environmental limitations. Based on her review of Carter's medical records, including the opinions upon which the plaintiff's appeal is based, Dr. Picciotti found that Carter was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Picciotti found that Carter's functional capacity included various postural limitations, including no more than occasional stopping, kneeling, crouching, or crawling.[6] (Tr. 75–78, 95–98.) In evaluating Dr. Picciotti's opinions, the ALJ found that:

> The light work and postural limitations are reasonable based on the claimant's degenerative conditions, including her back and knee conditions. The claimant received injections and medial branch blocks as treatment for these conditions, which supports the limitations in these areas. The claimant had mild deficits on exam of her back and knee, which supported the extent of the limitations in this consultant's findings. Furthermore, the environmental limitations reasonably prevent exacerbations of the claimant's emphysema conditions. However, the claimant did not require more intensive treatment such as surgery for her impairments, and her conditions were managed conservatively. Even with conservative management, the claimant had mild exam deficits. The claimant had edema, effusion, tenderness, crepitus and discomfort at the end of range of motion in her knee, but these were mild findings, and in September 2018, the claimant had mostly unremarkable exam findings. The

---

[6] Dr. Picciotti found additional postural and environmental limitations that are not material to this appeal.

claimant's breathing and lung findings on exam were also unremarkable. These minor deficits with conservative treatment did not support a finding of greater limitations. For these reasons, I find the prior administrative finding of the State agency medical consultant persuasive.

(Tr. 22 (citations omitted).)

The prior administrative findings also included the opinions of a state agency psychological consultant, Douglas Schiller, Ph.D., who had found the claimant subject to moderate limitations in the areas of social interaction and adaptation. Based on his review of Carter's medical records, including the opinions upon which the plaintiff's appeal is based, Dr. Schiller found that Carter had moderate limitations in her ability to interact appropriately with the general public, her ability to accept instructions and respond appropriately to criticism from supervisors, her ability to get along with coworkers or peers, her ability to maintain socially appropriate behavior, her ability to respond appropriately to changes in the work setting, and her ability to set realistic goals or make plans independently of others. Dr. Schiller found that Carter's reported symptoms were only "partially supported" by the evidence of record. He noted that, "[w]hile she had a brief inpatient stay recently, the overall [mental] status functioning and her activity report over time indicate[]

she is able to understand/follow basic instructions." Ultimately, Dr. Schiller opined that Carter's "mental condition does not preclude involvement in routine, non[-]complex tasks/activities." (Tr. 78–80, 98–100.) In evaluating Dr. Schiller's opinions (together with those of the consultative psychological examiner), the ALJ found that:

> These statements are consistent with the record and supported by the evidence as a whole. Additionally, these [prior administrative] findings and [the consultative examiner's] opinion are generally consistent with one another. These statements generally noted limitations in areas including interacting with others and performing tasks. The consultative examiner noted moderate to marked limitations on interacting with others. These limitations are generally consistent with the nature of the claimant's major depressive disorder and anxiety. In July 2018, the claimant had a voluntary admission after reporting to the emergency room with suicid[al] ideation, and during a psychological consultative exam, the claimant had an anxious mood to support findings in these opinions and administrative findings. The claimant's subsequent treatment records showed that the claimant's condition was managed conservatively. While the claimant still had anxiety complaints and mood deficits on exam, she was doing well overall in April 2019 and generally exhibited minor mental status exam deficits at these appointments. This conservative management supported the extent of the deficits in these findings and opinion. For these reasons, I find the [consultative examiner's] opinion and [the] prior administrative findings persuasive. Based on these opinions and the supporting evidence, I find the limitations related to simple tasks,

instructions, judgments, decisions, workplace change and goal[-]oriented work. I further find the social limitations as set forth above. I find the claimant is precluded from interacting with the general public based on the moderate to marked limitation from the consultative examiner and the claimant's report that she does not like to socialize as often. However, I have not followed the moderate to marked recommendation from [the consultative examiner's] opinion on interacting with coworkers. Overall, the evidence showed the claimant did not support a finding of further social restrictions. Overall, the evidence showed the claimant responded well to conservative treatment, which is consistent with the mental restrictions in the above residual functional capacity.

(Tr. 22–23 (citations omitted).)

The plaintiff has not challenged the ALJ's evaluation of these prior administrative findings.

### 2. Occupational Therapist Opinion

On February 6 and 7, 2018, occupational therapist Kerri Coudriet conducted a functional capacity assessment of Carter. Over the course of two days, Carter underwent a series of tests, the results of which formed the basis of Coudriet's opinion regarding Carter's functional capacity. On examination, Coudriet noted that Carter's neck and her upper and lower extremities on both sides were within functional limits, with some tightness noted, and with 4-/5 strength exhibited in all four extremities.

Coudriet observed that Carter's back was limited to 10 degrees.[7] Coudriet found that Carter was able only to lift or carry up to 5 pounds occasionally, and she was unable to lift or carry any amount of weight frequently.[8] Coudriet found that Carter was unable to perform *any* "low level activity," which apparently includes stooping, kneeling, crouching, and crawling. Coudriet opined that Carter had given full effort on 13 of 13 tests, and that she had demonstrated consistent performance on 27 of 27 tests. (Tr. 734–37.)

Upon review, the ALJ found that this opinion was "less persuasive" than the prior administrative findings by the state agency medical consultant, Dr. Picciotti. The ALJ found that Coudriet's functional capacity assessment was:

> not supported by the evidence or consistent with the record as a whole. Although the claimant's treatments such as injections suggested exertional limitations, the claimant's treatment was otherwise conservative. The claimant had minor exam deficits that did not support

---

[7] Coudriet's assessment did not indicate whether this was within functional limits or not.

[8] Based on this exertional limitation, Carter argues that she was not even capable of performing the full range of "sedentary work," which the applicable regulations define as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a); *id.* § 416.967(a).

> the extent of the findings in this evaluation. The evidence was more consistent with the prior administrative findings as detailed above. For these reasons, I find this evaluation less persuasive.

(Tr. 23.)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. In formulating Carter's RFC, the ALJ did not necessarily reject the medical opinion of the occupational therapist, but found it "less persuasive" than the conflicting opinion of Dr. Picciotti, the state agency medical consultant whose evaluation formed the basis of the agency's prior administrative findings. The ALJ expressly articulated her findings on the supportability and consistency of both opinions as well, noting in particular the conservative treatment afforded to Carter's conditions and the mild exam deficits noted throughout her medical records.

Accordingly, we find the ALJ's evaluation of the opinion of occupation therapist Coudriet is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. Treating Family Physician Opinion

On August 23, 2019, Carter's treating family physician, Dr. Victor Lahnovych, provided Carter's attorney with a letter summarizing her

medical condition and treatment, and expressing his opinion in support of her application for disability benefits. Dr. Lahnovych noted that he "support[ed] her in her belief that she is disabled from pursuing gainful employment in her current field as a housekeeper." He summarized Carter's reported symptoms, consisting "mainly of chronic low back pain and right knee pain," which she had characterized as "severe enough that she doesn't leave her house much." He recapped medical findings based on a recent MRI of her lumbosacral spine, which showed a small midline herniated disc at L5/S1, multiple levels of bulging discs, and mild lateral recess and neuroforaminal stenosis bilaterally at the L3 through S1 levels.[9] He further noted medical findings regarding recent x-rays, which showed moderate osteoarthritic changes to her right shoulder and mild to moderate osteoarthritic changes to her right knee.[10] He noted that Carter had reported that an orthopedic surgeon had recommended a knee replacement, but would not perform that surgery until she quit smoking.

---

[9] To be clear, Dr. Lahnovych merely summarized the findings of another medical provider here; the MRI was interpreted by a radiologist. (*See* Tr. 367–68.)

[10] Once again, Dr. Lahnovych merely summarized the findings of other medical providers here; each x-ray was interpreted by a radiologist. (*See* Tr. 381, 1230.)

Dr. Lahnovych noted that, in addition to her continued smoking, Carter had a history of chronic obstructive pulmonary disease and frequent reports of shortness of breath. Dr. Lahnovych summarized Coudriet's February 2018 functional capacity assessment and attached a copy of the occupational therapist's report to his letter. He noted that he had observed Carter frequently using a cane to ambulate. Finally, he expressed his own opinion that Carter was "disabled." (Tr. 1313–18.)

Upon review, the ALJ found that this opinion was not persuasive. In particular, the ALJ noted Dr. Lahnovych's reference to the February 2018 functional capacity assessment by the occupational therapist, Coudriet, and reiterated her prior finding that "the extreme limitations of the functional capacity evaluation are not consistent with the minor deficits and conservative management in the record. The ALJ found Dr. Lahnovych's "conclusory statement[s]" that Carter was "disabled" were "neither inherently valuable nor persuasive" because because these were statements on issues reserved to the Commissioner. The ALJ noted that the doctor's observation that he had seen Carter using a cane to ambulate did not indicate whether he (or any other medical provider) had found the use of a cane medically necessary, and she found this statement to be

neither supported by the evidence or consistent with the record as a whole. (Tr. 23.)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency. As noted above, the ALJ had already expressly articulated her findings on the supportability and consistency of the occupational therapist's functional capacity assessment, referenced here by Dr. Lahnovych, and found it to be not supported by the evidence or consistent with the record as a whole. She likewise expressly articulated her findings on the supportability and consistency of the physician's comment regarding Carter's use of a cane to ambulate, which was neither supported by other evidence in the record nor consistent with the record as a whole. Finally, the ALJ correctly determined that the doctor's statements that Carter was "disabled"— whether from her current occupation as a housekeeper or from work in general—were "inherently neither valuable nor persuasive" under the applicable regulations, which expressly and exclusively reserve to the Commissioner (or the ALJ as her designee) the ultimate issue of whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3); *see also Knittle*, 2021 WL 5918706, at *6.

Accordingly, we find the ALJ's evaluation of the opinion of treating family physician Dr. Lahnovych is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 4. Consultative Examining Psychologist Opinion

On August 8, 2018, consultative examining psychologist Andrew Cole, Psy.D., conducted a mental status evaluation of Carter. Dr. Cole noted a recent history of suicidal ideation, including inpatient treatment in July 2018 and outpatient services following her discharge. Dr. Cole observed appropriate dress and grooming and normal posture, motor behavior, and eye contact. He observed fluent and clear speech, coherent and goal-directed thought processes, and a full range of affect. He noted that Carter reported feeling anxious. He observed that she seemed to be intact to person, place, and time, with attention and concentration "mostly intact." He observed intact memory skills, borderline intellectual function, and adequate insight and judgment. Dr. Cole summarized Carter's reported daily activities. He recorded mental health diagnoses of (a) major depressive disorder with recurrent episodes and (b) generalized anxiety disorder, and a guarded prognosis. For treatment, Dr. Cole recommended medical follow-up, individual psychological

therapy, and psychiatric intervention. (Tr. 1043–46.)

Along with his mental status evaluation report, Dr. Cole completed a Social Security Administration form report on Carter's ability to do work-related activities. Dr. Cole opined that Carter had mild-to-no restrictions with respect to her ability to understand and remember simple instructions and to carry out simple instructions. He opined that Carter had mild restrictions to her ability to make judgments on simple work-related decisions, to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions. Dr. Cole opined that Carter had moderate-to-marked restrictions with respect to her ability to interact appropriately with the public or with co-workers, but she had only moderate restrictions with respect to her ability to interact appropriately with supervisors or to respond appropriately to usual work situation and to changes in a routine work setting. (Tr. 1047–49.)

Upon review, the ALJ found that this opinion "persuasive."[11] The

---

[11] The ALJ's full evaluation of this evidence is set forth above, where we have discussed the ALJ's evaluation of the opinions of Dr. Schiller, a state agency psychological consultant, and the prior administrative findings based on that opinion. The ALJ discussed Dr. Schiller's and Dr. Cole's opinions in tandem.

ALJ noted that the opinions of Dr. Cole and Dr. Schiller were largely consistent, with exception of conflicting opinions regarding limitations to Carter's ability to interact appropriately with the public or with co-workers. Dr. Cole found moderate-to-marked restrictions in both of these areas, while Dr. Schiller found only moderate limitations. Based upon the evidence of record, the ALJ adopted Dr. Cole's findings with respect to Carter's ability to interact appropriately with the public and Dr. Schiller's findings with respect to Carter's ability to interact appropriately with co-workers, explaining:

> I find the claimant is precluded from interacting with the general public based on the moderate to marked limitation from the consultative examiner and the claimant's report that she does not like to socialize as often. However, I have not followed the moderate to marked recommendation from the [consultative examiner's] opinion on interacting with coworkers. Overall, the evidence showed the claimant did not support a finding of further social restrictions. Overall, the evidence showed the claimant responded well to conservative treatment, which is consistent with the mental restrictions in the above residual functional capacity.[12]

(Tr. 23.)

_____

[12] As previously noted, the RFC determination provided that Carter was "limited to occasional interaction with co-workers and supervisors but no interaction with members of the general public." (Tr. 20.)

Here, the ALJ properly considered the medical evidence of record and the relevant factors of supportability and consistency, and she expressly articulated her findings on the supportability and consistency of both opinions. Faced with largely consistent medical opinions from Dr. Schiller and Dr. Cole that conflicted on these two findings only, the ALJ considered the evidence as a whole and concluded that Dr. Cole's findings with respect to Carter's ability to interact appropriately with co-workers was not as well supported or consistent with the other evidence of record and Dr. Schiller's findings. While this same evidence might reasonably support a different conclusion as well, it does not compel it. Thus, we find the ALJ's determination with respect to this particular finding by Dr. Cole was based on substantial evidence.

Accordingly, we find the ALJ's evaluation of the opinion of consultative examining psychologist Dr. Cole is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## B. The Plaintiff's Subjective Complaints of Pain

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in her evaluation of Carter's

symptoms, including her subjective complaints of pain in particular. *See generally* 20 C.F.R. §§ 404.1502(i), 416.902(i) ("Symptoms means your own description of your physical or mental impairment.").

Standing alone, a claimant's allegation of pain or other symptoms is not enough to establish an impairment or disability. 20 C.F.R. §§ 404.1529(a), 416.929(a); *Prokopick v. Comm'r of Soc. Sec.*, 272 Fed. App'x 196, 199 (3d Cir. 2008) ("Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). "An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so." *Prokopick*, 272 Fed. App'x at 199 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)).

When evaluating a claimant's subjective allegations of pain or other symptoms, an ALJ utilizes a two-step process. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *2 (revised Oct. 25, 2017). First, the ALJ must determine whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. *Id.*, at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). A claimant cannot be found to be "disabled based on alleged symptoms alone." Soc. Sec. Ruling 16-3p,

2017 WL 5180304, at *4.

Once the ALJ has found that a medically determinable impairment has been established, the ALJ must then evaluate the claimant's allegations about the intensity, persistence, or functionally limiting effects of his or her symptoms against the evidence of record. *Id.* This evaluation requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, the plaintiff rests her challenge on a faulty premise. She contends that the ALJ in this case based her decision solely "on her own view of the medical evidence only." (Doc. 19, at 11.) But it is clear from the ALJ's decision that she considered not only medical evidence, but also the claimant's own statements about the intensity, persistence, and limiting effects of symptoms, including her testimony at the administrative hearing and her self-reported activities of daily living. The ALJ's decision expressly and *extensively* discussed both the medical and non-medical evidence in the record. (*See* Tr. 20–23.) This included

consideration of the claimant's statements regarding the limiting effects of her symptoms on her ability to stand or walk, her ability to do yardwork and household chores, and her ability to concentrate. (Tr. 20.) It also included consideration of the claimant's medical records, which generally demonstrated "minor deficits" and "conservative management." (Tr. 20–22.) Finally, the ALJ considered the various medical opinions and prior administrative findings in the record, which we have already discussed above. (Tr. 22–23.) Based on all this evidence, the ALJ concluded that, while Carter's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20.)

Although Carter quibbles with the outcome of the ALJ's analysis of the evidence of record, it is clear that the ALJ properly evaluated the claimant's symptoms in accordance with the applicable regulations, and that the ALJ reasonably concluded that, notwithstanding the claimant's subjective complaints of pain and other symptoms, the evidence as a whole did not support physical or mental limitations in excess of those

set forth in the ALJ's RFC determination. While this same evidence might have also reasonably supported the adoption of substantially greater limitations, it did not compel such a finding.

Accordingly, we find the ALJ's evaluation of the plaintiff's subjective complaints of pain and other symptoms is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Carter was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: January __14__, 2022

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge